**UNITED STATES FIDELITY & GUARANTY CO. et al. v. CITY OF CLEVELAND (two cases).**

**Nos. 7119, 7120.**

Circuit Court of Appeals, Sixth Circuit.

March 10, 1937.

C. M. Horn and C. W. Sellers, both of Cleveland, Ohio (Thompson, Hine & Flory, McKeehan, Merrick, Arter & Stewart, and W. B. Stewart, all of Cleveland, Ohio, on the brief), for appellants.

Alfred Clum and H. F. Burns, both of Cleveland, Ohio (Alfred Clum, Gordon C. Locke, and Chas. W. White, all of Cleveland, Ohio, on the brief), for appellee.

Before HICKS and ALLEN, Circuit Judges, and LEDERLE, District Judge.

LEDERLE, District Judge.

The questions involved in these two cases are the same, and they were heard together. The District Court entered a decree ordering the appellants to make good losses sustained by the City of Cleveland because of the failure of two trust companies where city funds were on deposit. The facts are not in dispute.

The city entered into a contract with the Union Trust Company, of Cleveland, for the deposit of public funds under the control and custody of the Sinking Fund Commission, on June 25, 1932. On July 1, 1932, the city entered into a similar contract with the Union Trust Company for the deposit of funds known as "active" and "inactive funds." These funds were required to be kept separate by law.

The Union Trust Company filed with the city surety bonds executed by the appellants, and, at or about the same time, also deposited with the city certain collateral securities.

At or about the same time similar arrangements were made with the Guardian Trust Company, and identical contracts were entered into.

On February 27, 1933, both trust companies suspended payment of deposit liabil-

ities, and on February 28, 1933, the superintendent of banks took charge of the affairs of the trust companies.

On or about the 27th of February, 1933, the duly authorized officers of the City of Cleveland made a demand upon the respective trust companies for the payment of all the deposits then held by said companies. The companies failed and refused to pay, and this action was brought against the sureties on the various bonds to enforce payment.

It is admitted that the city holds securities pledged on account of the contract relating to the general funds of the city in excess of the deposit liabilities of the trust companies on the sinking fund account.

It is the contention of all of the appellants that the city should be required to apply the collateral held by it to the account before proceeding against the sureties, and that the sureties are entitled to exoneration. It is admitted that at law the surety is required to pay the obligation of the bond before it can seek the benefit of other security held by the creditor. It is contended, however, that a different rule applies in equity.

"The surety's liability is fixed by the terms of its contract." Massachusetts Bonding & Ins. Co. v. United States (C.C. A.) 54 F.(2d) 1039, 1040.

In this case, the contract is not ambiguous, and expressly provided that the surety would pay upon the banks' default. The action of the banks of February, 1933, constituted defaults and breaches of the bonds. It thereupon became the duty of the sureties to make prompt payments in accordance with the terms of their contracts.

It seems apparent from the contracts entered into by the parties, that it was the intention not only to secure to the City of Cleveland ultimately the repayment of all deposits made, but also that this payment should be made promptly, in order not to interfere with the operation of the city's business.

The contracts expressly provided:

" * * * Provided, however, that in the event of failure or default of its obligations by the principals herein, the sureties hereto shall upon complete performance by it of all obligations of the principal hereunder, be subrogated to all the rights of the obligee as to all securities and property pledged by said principal to said obligee as indemnity against loss by reason of the failure of said principal to fully perform its contract or proposal and award as a depositary of said Sinking Fund Commission of the City of Cleveland, Ohio."

This express provision in the contract negatives any idea that the parties intended that the city should exhaust its remedy against the bank before the surety would be obliged to pay.

The rule with reference to situations of this kind is well stated in Williston on Contracts, Revised Edition, Volume 4, § 1,276, as follows:

"The common law rule is that the surety must pay and seek reimbursement from the principal or out of the securities the latter has given the creditor. This was always the rule in courts of law; but in equity and in bankruptcy proceedings a rule somewhat analogous to that of the civil law grew up. In all such cases equity required that the creditor should be saved from delay, from expense and from all risk. When the object of the sureties appeal to equity was to compel the creditor to exhaust the collaterals in his hands before proceeding against the surety, the foundation of equitable relief was the inability of the surety himself to enforce such collateral after paying the debt or the possibility that the creditor by some act had impaired its value or destroyed its legality. The mere fact that the creditor held security for the debt did not entitle the surety to appeal to equity for a decree that the creditor look first to such security for his pay. In such a case the surety could protect himself by paying the claim and by being subrogated to the creditor's rights to the security."

There was no collateral in the possession of the sinking fund commissioners at the time the trust companies defaulted and the question was raised that collateral pledged to secure the payment of the "active" and "inactive" funds could not be held to meet the deficit in the sinking fund account. It is not necessary to decide this question for the reason that the sureties' obligation would be the same in either case. If the city had the right to resort to such collateral, the sureties would have the same right both because of the common-law rule and the express provisions of the contract.

It is further contended by appellants that they have been released and discharged by acts of the obligee and by rea-

son of the material alteration of the contract and expiration of the time of payment. The record does not support this contention. The city performed all of its obligations under the contract and from the beginning insisted upon the sureties performing their obligations.

It therefore follows that the city should recover and the decrees are affirmed.